# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CONNIE S. COLE, | : | |
| Plaintiff, | : | Case No.  3:09cv00191 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| ROBBINS and MYERS, INC., *et al.*, | : | |
| | : | |
| Defendants. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

For slightly longer than twenty-eight years, Plaintiff Connie S. Cole worked for Chemineer, Inc. in various labor positions.  She most recently worked as a Tool Room Attendant.

In November 2004 Plaintiff injured her back (her second job-related back injury).  She later developed depression and anxiety.  Plaintiff thereafter worked intermittently for Chemineer, Inc.  On November 14, 2007 – after a period of absenteeism – Plaintiff attempted to return to her job as a Tool Room Attendant.  Her attempt was very short-lived.  After she had worked just one-half day, Chemineer, Inc. terminated her

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

employment.

After her termination, Plaintiff applied for disability retirement benefits under the Chemineer, Inc. Collective Bargaining Pension Plan (the Plan), an "employee benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1002(4).  The Plan Administrator – Robbins and Myers, Inc. – denied Plaintiff's application on the ground that she was not under a "disability" as defined in the Plan.

Plaintiff brings the present case asserting that Robbins and Myers, Inc. wrongfully denied her application for disability retirement benefits in violation ERISA.  In addition to Robbins and Myers, Inc., Plaintiff's Amended Complaint names the Plan itself as a Defendant.

This case is before the Court upon the Agreed Administrative Record (Doc. #12), Plaintiff's Motion for Judgment Based upon the Administrative Record (Doc. #13), Defendants' Brief in Support of Denial of Benefits (Doc. #14), Plaintiff's Reply (Doc. #15), Defendants' Reply (Doc. #16), and the record as a whole.

**II.     Additional Background**

    **A.     Denial of Plaintiff's Application
              for Disability Retirement Benefits under The Plan**

After Plaintiff's termination, her attorney sent a letter and supporting documents to Chemineer, Inc. explaining that she had been granted Social Security benefits.  The letter asserted, "We feel that since she is now disabled totally as adjudged by the Social Security Administration..., she is entitled under her contract to begin receiving [disability]

retirement benefits from Chemineer." (Doc. #12, Exhibit 1).

On June 28, 2008, Defendant Robbins and Myers' Corporate Benefits Committee sent Plaintiff's attorney a letter explaining its decision to deny her application for disability retirement benefits as follows:

> "The award letter from the Social Security Administration enclosed with your letter provides that your client's disability for Social Security began on November 15, 2007. As you know, client's employment with Chemineer, Inc. terminated on November 14, 2007. Accordingly, because her disability for social security commenced after her termination of employment, Ms. Cole was not 'Disabled' under the Plan before her employment terminated and thus is not entitled to Disability Retirement benefits."

*Id*. at 62-63.[2] Plaintiff, through her attorney, appealed this non-disability decision by submitting to the Committee numerous documents containing test results, letters, and the opinions of several medical professionals. (Doc. #12 at 65-100).

In November 2008 the Committee again denied Plaintiff's application. *Id*. (Doc. #12 at 65-103). The Committee's second denial letter stated:

> "The Committee has reviewed the appeal and documentation you sent on August 13, 2008, as well as the terms of the Plan. Nothing submitted on appeal addresses the provisions of the Plan and its administration that were the basis for the initial denial. Therefore, for the reasons stated in its June 10, 2008 letter, the Committee has determined that Ms. Cole is not entitled to disability retirement benefits under the Plan.
>
> Under the terms of the Plan, the Committee may rely on any evidence of disability, including a determination of disability by the Social Security Administration, in determining whether a participant is disabled for purposes of receiving disability retirement benefits. It has been the Plan's

---

[2] The citations herein to specific pages in documents of record refer to the page numbers assigned by the Court's case management electronic case filing system.

3

>and the Committee's longstanding practice to rely on a determination of disability by the Social Security Administration when determining whether a participant is disabled under the Plan.  Furthermore, the Plan provides that a participant is not entitled to disability retirement benefits if the disability arose after the termination of employment."

(Doc. #12 at 103).

B.       **The Social Security Administration's "Disability" Decision**

An Administrative Law Judge issued what became the Commissioner of the Social Security Administration's final decision concerning Plaintiff's application for benefits. The Administrative Law Judge found that Plaintiff was under a "disability" as defined in the Social Security Act at two different times:  First, during a closed or limited period of time beginning on November 22, 2004 and ending on November 27, 2005[3]; second, beginning on November 15, 2007, the day after Chemineer, Inc. terminated her employment.  (Doc. #12 at 58, 61).

The Administrative Law Judge based these two disability findings in part on his assessment that Plaintiff could not perform greater than "light exertion work" due to degenerative lumbar disease and could not "handle the stress of ordinary work activity on a sustained, dependable basis" due to recurrent major depression.  (Doc. #12 at 58-61).

III.    **Discussion**

A.      **The Parties' Contentions**

---

[3] This closed period of disability coincided with the date Plaintiff suffered her second back injury and the date she returned to significant work (i.e., when she again began to engage in "substantial gainful activity," *see* 20 C.F.R. §404.1572, for Chemineer, Inc.  (Doc. #12 at 58, 61).

Plaintiff contends that Defendant Robbins and Myers' decision to deny her application for disability retirement benefits under the Plan was "simply wrong" (Doc. #13 at 200) and arbitrary and capricious. Plaintiff reasons that the medical records she submitted to Robbins and Myers' Corporate Benefits Committee constituted ample evidence establishing that her disability – particularly her major depression – was of long duration. Plaintiff further argues that the Committee's decision was arbitrary and capricious because it overlooked the Administrative Law Judge's conclusion that she was under a "disability" during a closed period of time (November 22, 2004 to November 27, 2005), well before Chemineer, Inc. terminated her employment.

Defendants maintain that the decision to deny Plaintiff's application was neither arbitrary nor capricious, and was indeed rational, in light of (1) the evidence Plaintiff submitted, (2) the Plan's definition of a "disability," and (3) the Social Security Administration's determination that she was under a disability beginning on November 15, 2007 after Chemineer, Inc. terminated her employment.

### B. The Applicable "Arbitrary and Capricious" Standard

The standard of judicial review applicable to an ERISA plan administrator's denial of disability benefits is well established:

> "As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits *de novo,* 'unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir. 1998) (*citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). When a plan administrator has discretionary authority to determine benefits,

>we will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.' *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)."

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003) (emphasis in original; quoting *Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 595 (6th Cir. 2001)).

The Plan in the present case provided Defendant Robbins and Myers with such discretionary authority. It does so by requiring Defendant Robbins and Myers' Corporate Benefits Committee to "control and administer the Plan...," by giving the Committee (1) "all powers necessary to carry out [the Plan's] purposes including...," (2) the power to "determine the existence and duration of ... Disabilities..." and (3) the power to "authorize or deny the payment of Plan benefits." (Doc. #12 at 158). Because the Plan provided the Committee with discretionary authority to determine whether Plaintiff was eligible to receive disability retirement benefits, "the highly deferential arbitrary and capricious standard," *McDonald*, 347 F.3d at 168-69, applies to judicial review of the Committee's non-disability decision. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 957; *see also Balmert v. Reliance Standard Life Ins. Co.,* 601 F3d 497, 501 (6th Cir. 2010)(and cases cited therein).

Under the arbitrary and capricious standard, the Committee's non-disability determination and resulting denial of Plaintiff's application for disability retirement benefits will be upheld "'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Balmert*, 601 F.3d at 501 (quoting *Baker v.*

6

*United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(citation omitted).

Although highly deferential, an arbitrary and capricious review must not devolve into an exercise in judicial rubber-stamping. *Balmert*, 601 F.3d at 501. "'Deferential review is not no review, and deference need not be abject.'" *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Rather, when resolving whether a plan administrator's non-disability finding was arbitrary and capricious, the Court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Bennett v. Kemper Nat. Services, Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (citations and internal punctuation omitted). A non-disability finding is not supported by substantial evidence, and is consequently arbitrary and capricious, when virtually all the medical evidence before the plan administrator shows the applicant was under a disability as defined in the Plan. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 843, 123 S.Ct. 1965 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence...."); *see also Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356, 359-62 (6th Cir. 2002); *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)(requiring judicial review of the quality and quantity of evidence; "[o]therwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single

piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits.")

Judicial review, moreover, is confined to the administrative record as it existed at the time of the final decision. *See Bennett*, 514 F.3d at 555-56; *see also Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 615 (6th Cir. 1998).

In light these well-established standards, the parties' dispute presents a single overarching issue: Whether the Committee's decision to deny Plaintiff's application for disability retirement benefits was arbitrary and capricious.

**C.     Analysis**

The analysis begins with the recognition that the Committee based its non-disability decision on the Social Security Administration's determination that Plaintiff's "disability" did not begin until November 15, 2007, the day after Chemineer, Inc. terminated her employment. This, according to the Committee, placed Plaintiff outside the Plan's definition of "Disability."

The Plan defined the term "Disability" in Section 2.13 as follows:

> **Disability** shall mean any physical or mental injury, illness or incapacity which, in the sole judgment of the Plan Administrator, based on the medical reports of a physician selected by the Plan Administrator and/or other evidence satisfactory to the Plan Administrator (<u>including evidence the Participant is eligible for disability benefits unde[r] the Social Security Act in effect on his date of Disability</u>), permanently prevents an Employee from satisfactorily performing his usual duties for the Company or the duties of such other position or job which the Company makes available to him....  However, Disability does not include any injury or disease which ... (v) arose after the termination of employment."

(Doc. #12 at 132) (bold in the Plan; underline added).  The language underlined above readily reveals that Section 2.13 of the Plan permitted the Committee to consider the Social Security Administration's disability determination when assessing whether Plaintiff was under a "disability" as defined in the Plan.  To this extent, then, the Committee's decision was grounded on Section 2.13's plain language and meaning.

Yet the arbitrary-and-capricious review does not end here because the Committee tied its consideration of the Administrative Law Judge's decision to the last sentence of Section 2.13, which is worth repeating:

> "However, Disability does not include any injury or disease which ... (v) arose after the termination of employment."

(Doc. #12 at 132).  In a simpler hypothetical case than presented here, the last sentence from Section 2.13 would exclude from the Plan's definition of "Disability" a Plan Participant who was completely healthy before her termination and whose injury or disease arose well after – say, six months to one year after – her termination.  The Committee, however, faced a more complex situation and record than posed by the above hypothetical.  What made it more complex?  The Administrative Law Judge's conclusion that Plaintiff was under a benefits-qualifying "disability" during the closed period of time (November 22, 2004 to November 27, 2005).

Instead of specifically addressing why Plaintiff's disability during the closed period did not matter under Section 2.13, the Committee honed in on the Administrative Law Judge's additional finding that Plaintiff was under a disability beginning on

9

November 15, 2007.  Indeed, the Committee's decision merely involved one-step thinking, between its recognition of the Social Security Administration's post-termination disability finding and its conclusion that Plaintiff was not under a disability as defined in Section 2.13.  Because of this, and given the absence of any meaningful discussion of either the Administrative Law Judge's pre-termination disability finding or the medical evidence before the Committee, the Committee's decision reads more like a conclusion than a principled, reasoned decision.  *Cf. Bennett*, 514 F.3d at 556 ("The actual explanation of the decision-making process employed simply states that Broadspire did not believe that the submitted documents contained 'sufficient medical evidence ... to substantiate a significant functional impairment that would prevent [ ][ ] Bennett from performing the essential functions of any occupation.'  This reads like a conclusion, not a "deliberate, principled reasoning process ... supported by substantial evidence." (internal citations omitted; brackets in original)).

    Next, "As a general rule, an administrator abuses its discretion when it engages in a 'selective review of the administrative record' to justify a decision to terminate coverage."  *Dockery v. USG Corp. Retirement Plan*, 2009 WL 2960471 at *11 (E.D.Mich. 2009) (quoting in part *Moon v. Unum Provident Corp.,* 405 F.3d 373, 381 (6th Cir. 2005)); *see Nord*, 538 U.S. at 843 ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence...."); *see also Spangler*, 313 F.3d at 359-62; *McDonald*, 347 F.3d at 172.  The Committee conducted this type of selective review by accepting one post-termination disability finding by the Administrative Law

10

Judge while not accepting – and not specifically addressing – the Administrative Law Judge's other pre-termination disability finding.  (Doc. #12 at 61).  The Committee's arbitrary and capricious selective review is likewise seen in its failure to address Administrative Law Judge's recognition that Plaintiff suffered the same impairments and resulting disability before her termination – indeed, the same "physical or mental injury, illness or incapacity..." in Section 2.13 language – as she again began to suffer on November 15, 2007.  The Committee's decision also omitted any discussion of the Administrative Law Judge's finding that Plaintiff had "been diagnosed with, and treated for, major depression since at least 2004, though there is also evidence in the record that her depression has been a long standing problem going back at least ten years...."  (Doc. #12 at 58).  This finding warranted some discussion by the Committee because it directly supported the conclusion that Plaintiff had a significant mental "injury" – a "Disability" as defined by Section 2.13 – at least four years before Chemineer, Inc. terminated her employment.  Because the Committee failed to explain away these aspects of the Administrative Law Judge's decision, and because it instead focused only on the Administrative Law Judge's post-termination disability finding, the Committee's non-disability decision was not the product of a "principled reasoning process." *Balmert*, 601 F.3d at 501.

The Committee's non-disability decision was also internally inconsistent.  The Committee explained, "It has been the Plan's and the Committee's longstanding practice to rely on a determination of disability by the Social Security Administration when

determining whether a participant is disabled under the Plan." (Doc. #12 at 103). Yet by not addressing or accepting the Administration Law Judge's pre-termination disability determination, the Committee overlooked its very own "longstanding practice" to rely on such determinations.

Turning to the Committee's consideration of the medical evidence, the Committee merely stated that it had reviewed all the documents Plaintiff submitted on appeal; it did not specifically describe or address the medical evidence. This was a troublesome omission because the quality and quantity of the medical evidence – which this Court must consider, *see McDonald*, 347 F.3d at 172 – establishes that Plaintiff's serious mental health problems arose before Chemineer, Inc. terminated her employment.

Dr. Jones, conducted a complete psychological examination of Plaintiff on February 24, 2005 and determined she was suffering from recurrent major depression. (Doc. #12 at 93-100). Plaintiff's treating psychologist, Dr. Payne, wrote a letter in October 2005 explaining that Plaintiff suffered from major depression. (Doc. #12 at 76). Dr. Payne further wrote, "It is my professional opinion that the much [sic] recent injury and subsequent limitations have exacerbated her depression." *Id*. Dr. Payne again documented Plaintiff's depression in April and June 2007. *Id*. at 69-70. And, after Plaintiff's termination, Dr. Payne wrote the following status report:

> "Connie Cole has suffered from a significant major depression since at least 2005. In August 2005 I wrote a letter stating that she was suffering from major depression and was taking psychotropic medication. At that time I further opined that her major depression had been exacerbated by a work related injury from 1997. In April 2007 I completed a form for Unum

12

> Provident stat[ing] that she was at that time psychological[ly] unable to tolerate the stress of competitive employment. On 4/9/06 I completed a prehearing social security inventory detailing her depression and anxiety.
>
> MMPI-2 results in early 2007 demonstrated the continuing presence of strong depression. I am currently seeing her, and she continues to have depression and significant anxiety. I maintain that she is still unable to be employed due to psychological status, and this status is not the result of her losing her job and <u>did not arise after her loss of employment</u>."

(Doc. #12 at 68). Considering the quality and quantity of this medical evidence and the lack of significant contrary medical evidence and the Administrative Law Judge's finding that Plaintiff was under a disability during the closed period before her termination, the Committee's decision to focus only on the Administrative Law Judge's post-termination disability determination was not the product of a principled reasoning process.

Defendants contend, "Ms. Cole's assertion that she was disabled prior to November 15, 2007 simply because she may have been suffering from a medical condition prior to that date is premised on the erroneous assumption that a medical condition always results in a disability. This, of course, is a non sequitur." (Doc. #14 at 212). In the same vein, Defendants find Plaintiff's argument to mean: "In essence, once disabled always disabled." (Doc. #16 at 243). Defendants reason:

> "This argument, of course, finds no support in logic or in the Plan. By Ms. Cole's rationale, if she had been determined to be 'disabled'' for even one day during her 28 years of employment at Chemineer, but then returned to work the next day, she would be entitled to a lifetime of disability retirement benefits. That interpretation turns the Plan language on its head. Disability under the Plan not only requires a medical condition, but one that prevents an individual from performing the normal duties of the individual's job. If an individual is working, she by definition is not disabled for purposes of the Plan."

13

*Id.* The problem with this reasoning is that it misses the significance – under the language of Section 2.13 – of the Social Security Administration's determination that Plaintiff's suffered from a "disability" in 2004 due to recurrent major depression. That finding placed Plaintiff within Section 2.13's definition of "disability" because it confirmed that her mental injury and resulting disability arose before the termination of her employment. In addition, the language of Section 2.13 does not specifically address the situation Plaintiff presented: an applicant who had a pre-termination disability, followed by a period of improvement, followed by termination and a resulting disability that arose after termination. Section 2.13 does not contain any language indicating that Plaintiff's period of improved mental health essentially negates her prior disability status. Lacking such "negating" language, Section 2.13 merely required Plaintiff's disability to have arisen before her termination. Because the record before the Committee contained medical evidence and an Administrative Law Judge's decision establishing that Plaintiff was under a pre-termination disability, Section 2.13 does not support Defendants' reliance on her period of improvement as a basis for negating her pre-termination disability status.

     Accordingly, the Committee's decision to deny Plaintiff's application for disability retirement benefits was arbitrary and capricious. Because the record conclusively establishes that she was under a "Disability" as defined by Section 2.13 of the Plan, she is entitled to an Order requiring Defendants to grant her application for disability retirement benefits and to provide her with such benefits.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Motion for Judgment Based upon the Administrative Record (Doc. #13) be GRANTED;

2. Defendants be ORDERED to grant Plaintiff's application for disability retirement benefits and to provide Plaintiff with all benefits due her under the Plan calculated to begin on November 15, 2007 and continuing thereafter;

3. The Clerk of Court be directed to enter Judgment in her favor and against Defendant Robbins and Meyers, Inc. and Defendant Chemineer, Inc., Collective Bargaining Pension Plan; and

4. The case be terminated on the docket of this Court.


July 23, 2010

                s/Sharon L. Ovington
                Sharon L. Ovington
               United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).