IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CONNIE S. COLE,

               Plaintiff,

        vs.

ROBBINS & MYERS, INC., et al.,

               Defendants.

:
:
:
:
:
:

Case No. 3:09cv191

JUDGE WALTER HERBERT RICE

---

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. #13);
DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. #14);
DECISION AND ENTRY OVERRULING DEFENDANTS' OBJECTIONS
(DOC. #18) TO THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #17); SAID JUDICIAL FILING ADOPTED
AS SUPPLEMENTED HEREIN BY THE COURT'S REASONING AND
CITATIONS OF AUTHORITY; TERMINATION ENTRY

---

Plaintiff Connie S. Cole ("Cole") has brought this action pursuant to the

Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

Cole is a former employee of Chemineer, Inc. ("Chemineer").  As an employee,

Cole was entitled to participate in the Chemineer, Inc., Collective Bargaining

Pension Plan ("the Plan"), a qualifying plan under ERISA. See 29 USC § 1002.  The

Administrator of the Plan is Robbins & Myers Inc. ("Robbins & Myers").  Cole's

employment with Chemineer ended on November 15, 2007, after which she began

the process of applying for disability benefits, both through the Social Security

Administration ("SSA") and the Plan.  After her initial claim and subsequent appeal

for disability benefits were denied by Robbins & Meyers, Cole brought suit in this

Court.  The only issues in this case are the sufficiency of the review, which

Robbins & Myers afforded Cole's claim for disability benefits under the Plan and

Cole's proper remedy, if any.

A copy of the administrative record has been filed with the Court (Doc. #12)

and the parties have filed cross-motions for judgment thereon (Docs. #13, #14).[1]

The stipulated administrative record consists of 111 pages, numbered 51–162 in

the Court's docketing system.  The Court will refer to such as "A.R. at [page #]."

The Court begins with the factual and procedural background of the case.

## I. Factual and Procedural Background

Cole began working at Chemineer in October of 1979, and held a variety of

positions with the company, most recently being employed as a Tool Room

Attendant, until her termination on November 14, 2007. A.R. at 51.  In 1988,

Cole, in the course of her employment, suffered a back injury and was later

---

[1]Defendants' filing was captioned "Defendants' Brief in Support of Denial of Benefits," but the Court will treat it as a Motion for Judgment on the Administrative Record, consistent with the unique standard of review applied by a district court when considering a denial of benefits case under ERISA.

diagnosed with lumbar degenerative disc disease. Id. at 58.  In November 2004, Cole reinjured her back at work and was on short-term disability leave from November 22, 2004, until November 27, 2005. Id.  While Cole was on disability leave, she began to experience problems with depression and anxiety that has continued to affect her up to and until the present day. Id.  In the early months of 2005, as Cole's depression worsened, she began to seek counseling from two licensed psychologists, Doctors Mary Ann Jones, Ph.D., and Ty Payne, Ph.D. Id. at 93.  Cole continued to meet with Dr. Payne over the next three years, and her treatment included psychotherapy, as well as medication. Id. at 68–90. Between November 27, 2005, and November 14, 2007, Cole attempted to return to Chemineer full-time.  However, because she continued to suffer from depression, she was frequently absent from work, sometimes for extended periods of time. Id. at 56–60.  She also continued to receive treatment from Dr. Payne, who documented her progress, his impressions of her condition and her results from various psychological tests. Id. at 68–92.  On November 14, 2007, Cole was terminated from her position at Chemineer due to excessive absenteeism.

On August 31, 2005, Cole requested a hearing from the SSA regarding social security disability benefits. Id. at 56.  Her request was eventually granted and she appeared at two hearings, the first on November 1, 2007, and the second on February 15, 2008. Id.  At the second hearing, Cole amended her application for benefits to request a "closed" period of disability starting on November 22, 2004,

and ending on November 27, 2005, and an additional period of disability starting
on her termination date, November 15, 2007.[2] Id.  The Administrative Law Judge
reviewed the evidence and, agreeing with Cole, found her to have been disabled,
under applicable law, during the dates she had requested. Id. at 61.

    After being adjudged disabled by the SSA, Cole, through her attorney, sent a
letter to the Chemineer Human Resources Department, asserting that she was
"entitled under her contract to begin receiving retirement benefits from
Chemineer." Id. at 51.  The letter was dated May 21, 2008, and included Cole's
"Notice of Award" letter from the SSA. Id.  This information was forwarded to
Robbins & Myers, who responded by letter on June 10, 2008.  Therein, Robbins &
Myers denied Cole's claim and indicated the following to Cole's attorney:

> The award letter from the Social Security Administration enclosed with your
> letter provides that your client's disability for purposes of Social Security
> began on November 15, 2007.  As you know, your client's employment with
> Chemineer terminated on November 14, 2007.  Accordingly, because her
> disability for purposes of social security commenced after her termination of
> employment, Ms. Cole was not "Disabled" under the Plan before her
> employment terminated and thus is not entitled to Disability Retirement
> Benefits.

Id. at 63.

    On August 13, 2008, Cole submitted her appeal of the decision denying
benefits.  Therein, she stated that her severe depression began long before she
was terminated.  She included several letters and medical reports from her

_____

    [2]It is not clear, from the Administrative Record, what dates Cole requested
before she amended her application at the second hearing.

-4-

psychologists, addressing her mental health condition and the state of her depression during the period between November 27, 2005, and November 14, 2007, and thereafter. Id. at 65–100.  On November 10, 2008, Robbins & Myers rejected Cole's appeal, stating that "[n]othing submitted on appeal addresses the provisions of the Plan and its administration that were the basis for the initial denial." Id. at 103.

Subsequently, Plaintiff brought suit in this Court.  She filed her Amended Complaint on August 25, 2009, and on November 4, 2009, she filed a motion for judgment based upon the Administrative Record. Docs. #10, #13.  After the matter had been fully briefed in this Court, it was submitted to Magistrate Judge Sharon L. Ovington for a Report and Recommendations, which was duly entered on July 23, 2010. Doc. #17.  In her Report and Recommendations, the Magistrate Judge agreed with Cole, concluding that Defendants' denial of her appeal was arbitrary and capricious, that judgment should be entered in her favor, and that Robbins & Myers should award her benefits. Id. at 14.

Defendants filed timely Objections to the Report and Recommendations, arguing both that the Plan Administrator's review and denial of Cole's claim was reasonable and, in the alternative, that if it were not, the proper remedy should be a remand to the Plan Administrator for further consideration. Doc. #18.  Given that the Report and Recommendations were rendered pursuant to a dispositive motion, Defendants' timely filing of Objections triggers de novo review by this Court of the

conclusions contained therein. See Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C.

§636(b)(1)(A).


**II. Opinion**

In reviewing the decision of an administrator denying plan benefits, allegedly

in violation of ERISA, the Court must consider two issues, to wit: 1) what standard

is to be applied in reviewing the denial, and 2) whether the decision denying

benefits is reasonable in light of that standard.  The Court addresses these

questions in turn.


**A. Standard of Review**

The Supreme Court has held that "a denial of benefits . . . is to be reviewed

under a de novo standard unless the benefits plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe

the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115

(1989).  However, where the benefits plan does provide such "authority to

determine eligibility for benefits or to construe the terms of the plan" a district

court will review the denial pursuant to the highly deferential "arbitrary and

capricious" standard. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380

(6th Cir. 1996).  A district court should apply the arbitrary and capricious standard

of review if it determines that the ERISA plan in question provides "a *clear* grant of

-6-

discretion [to the administrator] to determine benefits or interpret the plan." <u>Perez</u> <u>v. Aetna Life Ins. Co.</u>, 150 F.3d 550, 555 (6th Cir. 1998) (emphasis and brackets in original) (citation omitted).

In this case, the parties agree that the Plan vests substantial discretionary authority in the Administrator.  The Plan language specifically states that "the Plan Administrator has all powers necessary to carry out its purpose, including . . . interpret[ing] the plan and exercis[ing] discretion where necessary . . . [and to] determine the existence and duration of Approved Absences and Disabilities." A.R. at 158.  This language provides a clear grant of discretion to the Administrator. <u>See</u> <u>Yeager</u>, 88 F.3d at 380.  Accordingly, the arbitrary and capricious standard of review is applicable in this case. <u>Id</u>.

Though highly deferential, the arbitrary and capricious standard "is not a rubber stamp for the administrator's determination." <u>Elliott v. Metro. Life Ins. Co.</u>, 473 F.3d 613, 617 (6th Cir. 2006).  Stated somewhat differently, deferential review does not mean the absence of review; the deference need not be unquestioning. <u>McDonald v. Western-Southern Life Ins. Co.</u>, 347 F.3d 161, 172 (6th Cir. 2003).  Pursuant to this standard, the Court will uphold the Administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," even if the Court disagrees with the result reached by the Administrator. <u>Glenn v. Metro. Life Ins. Co.</u>, 461 F.3d 660, 665–66 (6th Cir. 2006) (citing <u>Baker v. United Mine Workers of Am.</u>

Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991)).

**B. Application**

"The question in any given disability case on 'arbitrary and capricious'
review is whether a plan can offer a reasoned explanation, based on the evidence,
for its judgment that a claimant was not 'disabled' within the plan's terms." Elliott,
473 F.3d at 617. Logically, Robbins & Myers "could have made a reasoned
judgment only if it relied on medical evidence that assessed [Plaintiff's] ability to
perform job-related tasks." Id. (citing McDonald, 347 F.3d at 172). Thus, the
terms of the Plan itself, along with the Plaintiff's evidence and the quality and
thoroughness of the Plan's review of same, are central to the Court's inquiry. As a
means of analysis, the Court will first set forth the operative terms of the Plan and
then discuss the evidence that Plaintiff presented to attempt to demonstrate
disability throughout the administrative review process. Finally, the Court will
consider the Defendants' review of the available evidence in light of the Plan's
terms, with the salient issue being whether the "not disabled" decision was
reasonable under the circumstances.

**1. Plan Terms**

A central component of a court's inquiry is the language of the benefits plan
itself, because the determination that a claimant is or is not entitled to benefits

depends on whether her ailments bring her under a given plan's terms. Whitaker v.

Hartford Life & Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005). Section

2.13 of the Chemineer Plan defines "Disability"as follows:

> *Disability shall mean any physical or mental injury, illness or incapacity which*, in the sole judgment of the Plan Administrator, based on the medical reports of a physician selected by the Plan Administrator and/or other evidence satisfactory to the Plan Administrator (including evidence the Participant is eligible for disability benefits unde [sic] the Social Security Act as in effect on his date of Disability), *permanently prevents an Employee from satisfactorily performing his usual duties* for the Company or the duties of such other position or job which the Company makes available to him and for which he is qualified by reason of training, education or experience. *However, Disability does not include any injury or disease which* (I) was contracted, suffered or incurred while Participant was engaged in, or resulted from, his having engaged in a criminal enterprise; (ii) was intentionally self-inflicted; (iii) arose out of service in the armed forces of any country; (iv) resulted from chronic or excessive use of intoxicants, drugs or narcotics; or (v) *arose after his termination of employment*.

A.R. at 132 (emphasis added). The precise definition of "disability" may be the

most important aspect of this case. Defendants repeatedly assert that a

"disability" under the Plan must be a permanent, incapacitating injury, and argue

throughout that any impairment Cole suffered while employed at Chemineer was

merely temporary. Defendants further assert that if Cole ever became *permanently*

disabled, it was only after her employment was terminated. Accordingly, they

argue, her depression never permanently prevented her "from satisfactorily

performing [her] usual duties." Id. It is worth mentioning, briefly, that Defendants'

position is not derived from an analysis of Cole's medical evidence, which is

discussed next. Rather, Defendants' argument is based entirely on the SSA

Administrative Law Judge's findings of the dates during which Cole was disabled for social security purposes.

### 2. Plaintiff's Evidence

Plaintiff first requested disability benefits under the Plan on May 21, 2008. The only evidence or information included with Plaintiff's initial claim was a copy of an award letter from the SSA, explaining the disability benefits Cole was to receive. A.R. at 52-55. Robbins & Myers rejected her initial claim, on the grounds that the SSA had determined that she was disabled over a "closed period" between November of 2004 and November of 2005, and that a new period of disability began on November 15, 2007. See id. at 62-63. Robbins & Myers wrote that the "closed" period of disability did not entitle Cole to any benefits, because it did not demonstrate that Plaintiff was "permanently" disabled as required by the Plan, an issue the Court will explain in greater detail in the following sections. As to the second period of disability found by the SSA, the denial letter stated the following:

> The award letter from the Social Security Administration enclosed with your letter provides that your client's disability for purposes of Social Security began on November 15, 2007. As you know, your clients employment with Chemineer, Inc., terminated on November 14, 2007. Accordingly, because her disability for purposes of social security commenced *after* her termination of employment, Ms. Cole was not "Disabled" under the Plan before her employment terminated and thus is not entitled to Disability Retirement benefits.

Id. at 63 (emphasis added). In the same letter, Robbins & Myers informed Cole of her right to appeal the rejection, and to submit additional evidence to support her

-10-

claim. Id.  Plaintiff appealed the denial of benefits on August 13, 2008.  This time

she included a variety of reports, letters, and medical records from various mental

health professionals, attesting to her struggles with depression.  She disputed the

Plan's finding that she was only temporarily disabled, contending that she had been

depressed for many years while she was working for Chemineer.  See id. at 65

("The symptoms and conditions surrounding Ms. Coles' [sic] disability have been

ongoing for many years but she continued to work through her disability while

undergoing treatment.").

Of particular note are three letters from Dr. Payne, Cole's treating

psychologist, which were included in her appeal.[3]  In a letter to Dr. Gardner, her

treating physician, dated April 12, 2007, Dr. Payne offered his assessment of

Cole's mental state at that time:

> On March 20, 2007, Connie Cole returned to my office for psychotherapy.
> At the time that I had seen her last she was off work due to a significant
> medical problem.  She has a history of work-related injuries.
>
> It is my impression that she is extremely anxious and fearful now about the

_____

[3]While these are not the only medical documents contained in her appeal, the
findings of Dr. Payne are highlighted herein because they deal with Cole's mental
health following her return to Chemineer on November 27, 2005, after her leave of
absence had ended, but before Chemineer terminated her employment on
November 14, 2007.  This time period seems most relevant in light of the manner
Defendants went about reaching the decision to deny benefits.  However, the
Court has also considered the report of Dr. Jones from February 2005, which is
relevant in that her conclusions are similar to Dr. Payne's subsequent findings, and
help to demonstrate the long standing nature of Cole's depression.  See A.R. at
93–100.  Because the reports of both doctors are considered, the Court refers to
Cole's "psychologists," in the plural, throughout the remainder of its discussion.

possibility of being re-injured and severely physically limited.  To be specific, she fears that she will become wheelchair bound.

I had Connie complete the Beck Anxiety inventory, and she scored in the severely anxious range.  I also had her complete the Beck Depression Inventory-II, and she scored in the severely depressed range.  She informs me that she is taking Cymbalta, Prempro, Valtrex, Ritalin, and Vallium.

* * *

It is my impression that Connie has a major depression of long-standing duration.  In addition she also has an anxiety disorder NOS.  Her depression and anxiety have worsened, and it appears that they have been exacerbated by her physical injuries and the resultant changes in her physical condition and life style.

Id. at 69.

In a second letter to Dr. Gardner, dated June 1, 2007, Dr. Payne described

his additional findings and recounted the results of other tests he had had Cole

complete:

I last saw Connie today, and I found that she was quite depressed and tearful.  She seemed to be under a lot of stress.

Earlier in May I had her complete the MMPI-2.[4]  I have enclosed a copy of that for your perusal.  It appears to me that the results are valid and reveal that Connie is having very significant psychological distress.  Her depression is certainly noted as is her sensitivity, tendency to repress feelings, and her general concern with her health.

I question her ability to return to work at this time.

Id. at 70.

_____

[4]The Court takes judicial notice of the fact that MMPI-2 refers to the Minnesota Multiphasic Personality Inventory test, a common diagnostic questionnaire used by psychologists and psychiatrists. See Fed. R. Evid. 201(b).

Finally, in a letter dated August 6, 2008, after Cole had been terminated and had begun the administrative claims process, Dr. Payne summarized his opinions as to when Cole became severely depressed:

> Connie Cole has suffered from a significant major depressive disorder since at least 2005. In August 2005 I wrote a letter stating that she was suffering from a major depression and was taking psychotropic medications. At that time I further opined that her major depression had been exacerbated by a work related injury from 1997. In April 2007 I completed a form for Unum Provident stated [sic] that she was at that time psychological [sic] unable to tolerate the stress of competitive employment . . . I completed a prehearing social security inventory detailing her depression and anxiety.
>
> MMPI-2 results in early 2007 demonstrated the continuing presence of strong depression. I am currently seeing her, and she continues to have depression and significant anxiety. *I maintain that she is still unable to be employed due to psychological status, and this status is not the result of losing her job and did not arise after her loss of employment.*

Id. at 68 (emphasis added).

The documented opinions of Cole's psychologists are the only medical evidence contained in the Administrative Record. While the Plan reserved the right to require Cole to submit to an exam by a medical professional of the Plan Administrator's choosing, the Administrator did not exercise that right. See A.R. at 144.

### 3. Defendants' Evaluation of Plaintiff's Claims

In rendering its one-page decision on Cole's appeal, Robbins & Myers did not discuss any of the medical reports and letters from her psychologists, other than to state that "[n]othing submitted on appeal addresses the provisions of the Plan and

-13-

its administration that were the basis for the initial denial." A.R. at 103.  It also

reiterated that it "has been the Plan's and the Committee's longstanding practice to

rely on a determination of disability by the Social Security Administration when

determining whether a participant is disabled under the Plan." Id.

 In order for a plan's decision to be reasonable, that is, neither arbitrary nor

capricious, it must normally "rel[y] on medical evidence that assesse[s] [a

claimant's] ability to perform job-related tasks." Elliott, 473 F.3d at 617; accord

Bennett v. Kemper Nat'l Servs., 514 F.3d 547, 556 (6th Cir. 2008).  The fact that

Robbins & Myers did not discuss Cole's medical evidence at all is part of the

reason the Magistrate Judge described its final decision as "read[ing] more like a

conclusion than a principled, reasoned decision." Doc. # 15 at 10 (citing Bennett,

514 F.3d at 556).

 By way of both explanation and justification, Defendants quote the Supreme

Court's decision in Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834

(2003), for the following proposition:

> Plan administrators . . . may not <u>arbitrarily</u> refuse to credit a claimant's
> reliable evidence, including the opinions of a treating physician . . . .
> [although] courts have no warrant to require administrators
> automatically to accord special weight to the opinions of a claimant's
> physician; <u>nor may courts impose on plan administrators a discrete</u>
> <u>burden of explanation when they credit reliable evidence that conflicts</u>
> <u>with a treating physician's evaluation.</u>

Doc. #18 at 5 (emphasis in Defendants' memorandum, but not in cited case).  The

"reliable evidence" that Defendants would have the Court credit is the SSA's

-14-

determination of Cole's disability dates, the only evidence mentioned or discussed

in the final decision.  Defendants acknowledge as much, writing: "Here, R&M's

decision to rely upon the SSA's determination of Ms. Cole's disability date *as*

*opposed to the medical evidence submitted by Ms. Cole* was not arbitrary, and was

not subject to any requirement that R&M specifically explain that decision." Doc.

#18 at 11 (emphasis added).[5]  Defendants reiterate several times that, per the

Plan's definition, a disability must *permanently* prevent an employee from

satisfactorily performing his or her job, and that her SSA award indicates that

Cole's impairment was never permanent, while she was employed at Chemineer.

Defendants also state that a disability that arises after a claimant is terminated

does not qualify for Plan benefits.  Defendants' theory of the case can thus be

broken down into the following propositions: 1) because the SSA determined

Cole's disability dates included a "closed period" between November 22, 2004 to

November 27, 2005, and a "new period" beginning on November 15, 2007, the

Plan's Administrators did not need to conduct their own inquiry into if or when

Cole became "disabled," and 2) because the "closed period" was, by its nature,

---

[5]A memorandum prepared by Robbins & Myers' attorneys at Thompson Hine
further clarifies Defendants' reasoning process in denying Cole's appeal.  In
pertinent part it reads: "Issue 1 . . . The first issue before the Committee is
whether the definition of Disability permits the Plan Administrator to make a
determination of disability solely on the basis of a finding by the Social Security
Administration."  Under "Issue 2 " the memorandum explains that "if the
Committee finds that the Plan Administrator may rely exclusively on the
determination of the Social Security Administration, it must then determine
whether Ms. Cole's disability 'arose' after her termination."  A.R. at 101.

not permanent, and the "new period" of disability began after her termination, Cole

was never "permanently prevented from satisfactorily performing her usual duties,"

while she was employed by Chemineer, and thus never met the definition of

disability contained in the Plan.  The Court finds Defendants' theory problematic for

several reasons.

At the outset, Defendants' appeal to Black & Decker is inapposite, when

that decision is read in context.  In that case, the Supreme Court rejected the so-

called "treating physician rule" as espoused by the Ninth Circuit, which would have

required ERISA plan administrators to afford special weight to the medical opinions

of a claimant's treating physicians, as opposed to the contrary opinion of an

independent medical expert hired by the administrator. Black & Decker, 538 U.S.

at 832 ("But the assumption that the opinions of a treating physician warrant

greater credit than the opinions of plan consultants may make scant sense when,

for example, the relationship between the claimant and the treating physician has

been of short duration, or when a specialist engaged by the plan has expertise the

treating physician lacks.").  Thus, the Sixth Circuit has cited Black & Decker for the

proposition that "while a plan administrator may not arbitrarily reject a treating

physician's opinion, this opinion need not be given any special deference." Cox v.

Std. Ins. Co., 585 F.3d 295, 302 (6th Cir. 2009).  The situation in this case is

rather different, as Robbins & Myers rejected Cole's appeal not on the basis of a

medical expert's evaluation that contravened those of her treating psychologists,

-16-

but, rather, because it determined that her SSA disability dates demonstrated, without the need for further inquiry, that she was not "disabled" under the Plan's terms, while an employee of Chemineer.  While Defendants cite no case law to indicate that this method of rendering a disability determination has been sanctioned in the Sixth Circuit or elsewhere, the Court will nevertheless address the specifics of Defendants' arguments in greater depth.

Assuming arguendo that Defendants' interpretation of <u>Black & Decker</u> is defensible, that is, that plan administrators are permitted to base a "not disabled" determination on the findings of some other evaluator, rather than by conducting their own inquiry into the medical evidence, the Court would still have to consider whether the substituted judgment is *reliable* evidence under the circumstances.  In other words, for Robbins & Myers' decision to be reasonable, the SSA's findings must somehow serve as a reliable proxy for a finding of non-disability under the Plan and its terms, thus obviating the need for independent inquiry on the part of the Administrator.[6]  <u>See</u> <u>Black & Decker</u>, 538 U.S. at 833.  For two reasons, the

---

[6]Defendants insist throughout their briefings that the Plan's terms reserve for the Administrator the right to make a determination based solely on the SSA's findings, but this is not exactly correct.  The relevant terms provide that a "Disability" is an "injury which, in the sole judgment of the Plan Administrator, based on the medical reports of a physician selected by the Plan Administrator and/or other evidence satisfactory to the Plan Administrator (including evidence the Participant is eligible for disability benefits unde [sic] the Social Security Act . . . ) permanently prevents an employee from satisfactorily performing his usual duties." A.R. at 132.  Thus, the Plan indicates that a finding that a claimant is eligible for SSA benefits *may* satisfy the Administrator that a claimant is also entitled to Plan benefits; it does not indicate that a finding of eligibility for SSA benefits, on or after

Court does not believe that the SSA's determination of Cole's disability dates is a

reliable substitute for the Plan's own determination.

First, what is at issue for a finding of "Disability" under the Plan is whether

or not Cole became permanently incapacitated at some time prior to her

termination from Chemineer. However, this issue was never placed before the

SSA for a decision. As reflected in the Administrative Law Judge's opinion, Cole's

application for social security disability benefits requested a "closed" period of

disability between November 22, 2004, and November 27, 2005, and a "new"

period of disability starting on November 15, 2007. A.R. at 56. Because the

Administrative Law Judge found in her favor, Cole was granted benefits consistent

with the dates that she had requested. Thus, it is not as if Cole, in applying for

benefits through the SSA, argued disability in terms of the Plan's definition,

whereupon the Administrative Law Judge evaluated her evidence, rejected her

---

a certain date, may act as proof that a claimant is *not* entitled to Plan benefits on a
prior date. This reading of the Plan's terms is consistent with the approach most
courts have taken when considering an SSA award in the context of an ERISA
appeal:  the SSA award may constitute some evidence that a claimant is entitled to
plan benefits, but it does not automatically require such a finding on the part of the
plan administrator. See Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir.
2005).  While the Sixth Circuit has indicated that an SSA award is one factor to be
considered in reviewing the reasonableness of a plan's decision to deny benefits,
see id., Defendants have not cited any decision in which a court has affirmatively
relied upon an SSA award as a basis for *upholding* a plan's decision to deny
benefits.

claim on the basis thereof, and found a different set of disability dates.[7]  Nor can

the Administrative Law Judge's opinion be read to mean that, because Cole *was*

disabled between November 2004, and November 2005, and then again on

November 15, 2007, she was *not* disabled on November 14, or November 13, or

some other day predating her termination from Chemineer.  The findings of Cole's

disability status for purposes of the SSA reflected the dates that *she* requested at

her hearing.  If a finding that Cole was entitled to benefits under the Plan's terms

was contingent on Cole's having been disabled on some other set of dates, it was

incumbent upon the Administrator to examine the medical evidence to determine if

such a finding was sensible.

 In her appeal, Cole did not rely on her SSA benefits as proof of her

entitlement to Plan benefits, but, rather, submitted medical evidence to support her

claim, including numerous evaluations from her treating psychologists.  In his final

letter, Dr. Payne made his findings unmistakable, both as to Cole's psychological

status and the time-frame for its onset, writing: "I maintain that [Cole] is still

unable to be employed due to psychological status, *and this status is not the result*

*of losing her job and did not arise after her loss of employment*. Id. at 68 (emphasis

added).  Robbins & Myers indicated, in its initial denial, that it would consider new

---

[7]As discussed below, Cole's selection of these particular dates in her SSA
application appear to be consistent with the substantive criteria that are applied in
social security benefits cases.  However, what is at issue in this case is Cole's
entitlement to benefits under the Chemineer Plan.

evidence submitted by Cole on appeal, which is consistent with its fiduciary

obligations under ERISA. See Kalish v. Liberty Mutual/Liberty Life Assur. Co., 419

F.3d 501, 511 (6th Cir. 2005) ("The administrative record in an ERISA case

includes all documentation submitted during the administrative appeals process

because this information was necessarily considered by the plan administrator in

evaluating the merits of the claimant's appeal.") (rejecting as arbitrary and

capricious defendant's refusal to consider claimant's evidence of depression as a

basis for disability where such was not raised before the plan's initial denial but

was raised subsequently, prior to its final decision); see also Evans v. Metro. Life

Ins. Co., 358 F.3d 307, 311 n.6 (4th Cir. 2004) ("We are aware that Evans stated

in his initial form seeking benefits that his disability began on December 2, 1999,

and that his lawyer, relying in part on the award of benefits by Social Security, also

represented during the administrative appeal that Evan's disability commenced

December 2, 1999.  Nevertheless, MetLife was not allowed . . . to necessarily limit

its disability determination to the date claimed by Evans and his lawyer.  The Plan

requires MetLife to review all evidence it received to determine disability.").

Ultimately, because the claims and supporting evidence she presented to the

Plan Administrator on appeal were not identical to those presented in her SSA

proceedings, Defendants could not reasonably conclude that Cole's disability dates,

as determined by the SSA Administrative Law Judge, resolved the issue of her

disability status under the Plan.  The Administrative Law Judge's opinion confirmed

that Cole was entitled to social security benefits for the dates identified in her application, but did not determine that she was not entitled to benefits on other dates or under any other program.

Second, the SSA's determination that Cole was or was not disabled on a certain set of dates cannot be divorced from the evaluative criteria and definitions that it employed in reaching that determination.[8]  The myriad benefits plans governed by ERISA often define disability somewhat differently than the SSA, or require proof of a different set of criteria in consideration of benefits, but the relevant inquiry must be governed by the particular plan's terms, not the SSA's. See Elliott v. Sara Lee Corp., 190 F.3d 601, 603 (4th Cir. 1999) ("[W]hat qualifies as a disability for social security disability purposes does not necessarily qualify as

---

[8]Throughout their memoranda, Defendants alternate between referring to Cole as being "temporarily disabled," on the one hand, and not being disabled at all, per the Plan's definition, because her impairments were not *permanent,* on the other. See, e.g., Doc. #18 at 10 ("Because the record is clear that Ms. Cole returned to work after November 27, 2005, the temporary disability period is of no consequence–the condition giving rise to Ms. Cole's temporary disability did not permanently prevent her from performing her job."). While it is clear enough that Defendants' argument is that Cole was not disabled under the Plan, because her impairments were not permanent, their rhetoric is confusing, at times, because the notion of a "temporary disability" is irrelevant if permanence is a threshold requirement for a finding of disability. As explained below, this confusion appears to be the result of Defendants' alternating between two different definitions of "disabled," one from SSA criteria, as applied by the Administrative Law Judge in awarding Cole social security benefits, and the other from the actual terms of the Chemineer Plan. This distinction is misleading, because it suggests that Cole's entitlement to benefits from the Plan turns on the dates of her award of benefits from the SSA, but ignores the substantive differences in those two entities' definitions of "disabled" and the criteria applicable thereto.

a disability for purposes of an ERISA benefits plan–*the benefits provided depend entirely on the language of the plan*.") (emphasis added); cf. Conkright v. Frommert, __ U.S. __, 130 S. Ct. 1640, 1646 (2010) (The Supreme Court has routinely "looked to principles of trust law for guidance" under ERISA, and "recognized that, under trust law, the proper standard of review of a trustee's decision depends on the language of the instrument creating the trust.") (citation omitted).

The way the SSA determines disability status is governed by a five-step sequential review process; if at any step a claimant is determined to be disabled or not disabled, the inquiry goes no further. See 20 CFR § 404.1520(a) and 416.920(a). One of the sequential steps is to determine whether an individual is engaging in "substantial gainful activity," which would require a finding of "not disabled." See id. To determine whether an individual is engaged in "substantial gainful activity," the SSA looks to whether he or she is employed, and to how much money he or she is making. 20 CFR § 404.1574(a); see, e.g., Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008) ("The [Social Security] Appeals Council initially informed [claimant] that she had not been continuously disabled since turning 22 because her average monthly earnings in 1986 and 1987 were greater than $300, thereby triggering a presumption that she had engaged in substantial gainful activity."). The Administrative Law Judge indicated that Cole's SSA disability dates were consistent with her having engaged

in substantial gainful activity between November 27, 2005, and November 14, 2007, the dates during which she had returned to Chemineer after a year-long absence. A.R. at 56. In other words, an individual is generally not considered disabled by the SSA if he or she is working.

By contrast, the Plan's definition of disability is met by an impairment that permanently "prevents an Employee from *satisfactorily* performing his usual duties," a somewhat less onerous burden as it can be satisfied while an individual is still employed and earning wages. A.R. at 132 (emphasis added). The record does not indicate that the Administrative Law Judge inquired into how satisfactory Cole's performance at Chemineer was, and such a finding would most likely be irrelevant to an SSA determination. Thus, because the definition of "disabled" that was employed for social security purposes was substantively different than the relevant definition under the Plan, Defendants could not reasonably rely on the SSA's "closed" period of disability as proof that Cole's impairment *under the Plan's terms* was merely temporary, or became permanent only after her dismissal. Put simply, Cole's disability status in terms of the Chemineer Plan was neither discussed nor decided by the Administrative Law Judge, who, in rendering his decision, applied specific federal laws that govern SSA cases.

Indeed, when Plaintiff's history before the SSA and the Plan's terms are considered side-by-side, it is apparent that a finding of Cole's depression leading to a "closed" period of disability for SSA purposes is not inconsistent with a finding of

-23-

its being *permanently* incapacitating for Plan purposes.  By way of illustration, if Cole clocked in to work beginning on November 27, 2005, endeavored to complete various tasks and received a normal paycheck, her activity might be considered both substantial and gainful in the eyes of the SSA; however, if her condition meant that she continued to be absent from work quite frequently, or was often ineffectual when present (as the Administrative Record, in fact, indicates in the present case), her performance of her usual duties might, nevertheless, be *unsatisfactory* in the eyes of her employer.  Thus, even if the SSA's determination that Cole was disabled on the set of dates she requested meant, by negative implication, that she was disabled on no other dates, that determination could only mean "not disabled" in light of the SSA's criteria, not the Plan's.

When considered in this context, the contrast between the proceedings before the SSA and the Plan seem unremarkable.  Cole's representations to the SSA did not make her claim for Plan benefits internally contradictory.  Rather, she simply presented two different arguments that reflected the differing criteria of the two respective entities with which she had filed claims, on the theory that she was entitled to recover benefits from both.  Accordingly, Defendants could not make a reasoned determination of Cole's status under the Plan, simply by reading the eight pages of the decision awarding her SSA benefits.  They were under a duty, as a fiduciary, to investigate Cole's evidence with reasonable "care, skill, prudence, and diligence. 29 USC § 1104 (A)(1)(b) (setting forth ERISA's fiduciary duty standards

-24-

of care).  Denying Cole's appeal for Plan benefits solely on the basis of two sets of

dates contained within her SSA award, without reference to any of her medical

evidence, is not indicative of the careful and diligent review owed by a fiduciary.

Quite the opposite, it suggests an outcome-oriented approach, seeking to deny

benefits. See Garmon v. Liberty Life Assur. Co., 385 F. Supp. 2d 1184, 1201

(N.D. Ala. 2004) ("The defendant's . . . reason for denial appears to be contrived

and spurious.  A decision that a plaintiff's employment terminated on January 23,

2002, and that, coincidentally, she only became disabled the next day is totally

wrong.") (finding plan administrator's review arbitrary and capricious, because it

ignored plaintiff's medical evidence and determined that the date she became

disabled for social security purposes was the same as the date she became

disabled for plan purposes, one day after her employment terminated).

It is well established that a plan administrator's decision may be found

inadequate upon arbitrary and capricious review if it presents insufficient reasoning

or analysis of the relevant medical data. See Elliott, 473 F.3d at 619 ("Put

differently, [reciting] medical data, without reasoning, cannot produce a logical

judgment about a claimant's work ability."); Kalish 419 F.3d at 509 (rejecting as

inadequate a report which simply recounted six pages of medical history and

engaged in only one page of analysis).  The nature of the review and analysis in

this case falls well below the mark the Sixth Circuit has set for a finding that an

administrator's review neither arbitrary nor capricious.  Defendants' analysis of

Cole's medical evidence was not inadequate; rather, it was simply nonexistent.

Accordingly, Defendants' decision to deny benefits was arbitrary and capricious.

## C. Remedy

Having determined that Defendants acted arbitrarily and capriciously in denying Cole's claim, only her remedy remains to be determined. "In cases such as these, courts may either award benefits to the claimant or remand to the plan administrator" for further consideration. Elliott, 473 F.3d at 621 (citing Smith v. Cont'l Cas. Co., 450 F.3d 253, 265 (6th Cir. 2006)). The Magistrate Judge found that Cole should be awarded disability benefits. In their Objections, the Defendants argue that, if the administrative review was inadequate, the proper remedy should be a remand of Cole's case to the Plan Administrator for further consideration. For the reasons that follow, the Court concludes that the Magistrate Judge's determination is correct, although for slightly different reasons than those reflected in the Report and Recommendations.

In Elliott, the Sixth Circuit set out the basic parameters of the remedial determination, once a court finds that a plan's decision to deny benefits was arbitrary and capricious:

> In Buffonge [v. Prudential Ins. Co. Of Am., 426 F.3d 20, 31 (1st Cir. 2005)], the court held that, where the "problem is with the integrity of the [the plan's] decision-making process rather than "that [a claimant] was denied benefits to which he was clearly entitled," the appropriate remedy generally

-26-

is to remand to the plan administrator. Ibid.  We agree with the First Circuit. Such a course is consistent with this court's precedent and we adopt it here. See Smith [v. Cont'l Cas. Co.,] 450 F.3d [253, 265 (6th Cir. 2006)] ("[W]e vacate the judgment of the district court and remand this case for entry of an order requiring CCC to conduct a full and fair review of Smith's disability claim.").

473 F.3d at 622.  However, "where there [is] no evidence in the record to support a termination or denial of benefits, an award of benefits is appropriate without remand to the plan administrator." Shelby County Health Care Corp. v. Majestic Star Casino, LLC, 581 F.3d 355, 373 (6th Cir. 2009) (internal quotation marks and citation omitted); see also Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 675 (6th Cir. 2006) (awarding retroactive benefits in lieu of remand), aff'd on other grounds, 554 U.S. 105 (2008).  The Sixth Circuit has acknowledged that "district courts must have considerable discretion to craft a remedy after finding a mistake in the denial of benefits." Elliott, 473 F.3d at 622 (internal quotation marks and citation omitted).  A district court is not required to remand a case for further review by the plan administrator where it is apparent that doing so would be futile, or could not possibly result in a denial of benefits decision that would be reasonable given the administrative record. Majestic Star Casino, 581 F.3d at 375; accord Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).

The Magistrate Judge's recommendation that Cole should be awarded benefits was based on reasoning similar to Defendants' argument above, although she reached the opposite conclusion.  The Magistrate Judge determined that Cole's absence from work between 2004 and 2005 demonstrated that her disability

-27-

"arose" before she was terminated, and characterized Cole's subsequent return to work as a period of "temporary improvement" which did not negate the fact that her disability predated her termination. Doc. #17 at 14. In other words, both the Magistrate Judge and Defendants considered the disability dates found by the SSA sufficient to reach a final decision, although the former takes them as proof that Cole is entitled to benefits, while the latter takes them as proof that she is not. For the same reasons as above, the Court respectfully disagrees. The Administrative Law Judge's determination only resolves the issue of Cole's SSA benefits. Her disability status under the Plan was a separate question that Defendants reviewed in an arbitrary and capricious manner.

Defendants argue in their Objections that even if the decision to deny benefits was arbitrary and capricious, a remand for further consideration is the appropriate remedy because the Administrative Record "is far from conclusive." Doc. #18 at 16. On the contrary, there is simply _no_ evidence in the Administrative Record that would tend to indicate that Cole was not suffering from disabling depression under the Plan's terms, and thus is not entitled to benefits. The only medical evidence in the record is from Cole's treating psychologists, who are clearly of the opinion that she suffered from disabling depression while employed at Chemineer. The Administrative Record is so limited, because Defendants never undertook any inquiry into Cole's medical evidence, preferring instead to base the decision to deny benefits entirely on the SSA's disability dates. Nevertheless, the

-28-

Administrative Record upon which the Court must make its determination became complete once Robbins & Myers issued its final decision denying Cole's appeal. See Wilkins v. Baptist Healthcare Sys., 150 F.3d 609, 618 (6th Cir. 1998) ("The district court's review of the merits of Wilkins's action was limited to the evidence presented to LINA at the time LINA's denial of benefits became final.").

A remand could accomplish one of two things: 1) it could give the Administrator a second chance to examine the same medical evidence, as it presently exists in the Administrative Record, or 2) it could allow Robbins & Myers to develop the evidentiary record further, to see if there is a reasonable medical basis upon which Cole's claim would fail.  Remand would be futile in the former case as there is simply no evidence in the Administrative Record upon which a rational denial of benefits could be based. See Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 477 (7th Cir. 1998) ("Cases that call for reinstatement usually either involve claimants who were receiving disability benefits, and, but for their employers' arbitrary and capricious conduct, would have continued to receive the benefits, or they involve situations where there is no evidence in the record to support a termination or denial of benefits.") (collecting cases where remand was unnecessary).  With no countervailing medical evidence in the record, a denial of Cole's claim on remand would require the Administrator to simply disregard her medical evidence wholesale, which is impermissible under ERISA. Evans v. Unumprovident Corp., 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator

may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician."). Similarly, remand would be inappropriate in the latter case, as Defendants should not now be permitted to supplement the evidentiary record by requiring Cole to submit to additional medical examinations, although they could have done so during the administrative review process, before this suit was initiated. See Majestic Star, 581 F.3d at 374 (affirming the district court's decision to award benefits despite defendant's argument that remand was appropriate, in order that the plan administrator could consider new evidence that might disqualify plaintiff's claim; because it had entered its denial decision and sought to defend same on the administrative record, "Majestic cannot now claim that its review is incomplete."); see also Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 530 (6th Cir. 2003) (noting that equitable principles "certainly weigh against [a plan administrator] taking . . . inconsistent positions" in administrative and court proceedings), overruled on other grounds by Black & Decker Disability Plan, 538 U.S. 822. The fiduciary obligations codified in ERISA are not consistent with allowing plan administrators the opportunity to repeatedly test a beneficiary's claims under new theories and evidence until one denial decision or another "sticks." See Majestic Star, 581 F.3d at 375 n.8 ("Remanding this case also is inappropriate because it would sanction the notion that a plan administrator may deny claims in a piecemeal fashion, testing each potential basis for denying a claim at separate points in the proceedings. Such

litigation is contrary to one of ERISA's 'primary goal[s],' of 'provid[ing] a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'") (quoting Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus., 900 F.2d 963, 967 (6th Cir. 1990)); see also Vega v. National Life Ins. Servs., 188 F.3d 287, 302 n.14 (5th Cir. 1999) (en banc) ("[Remand would be inappropriate because] we have made plain in this opinion that the claimant only has an opportunity to make his record before he files suit in federal court, [and] it would be unfair to allow the administrator greater opportunity at making a record than the claimant enjoys."), overruled on other grounds by Glenn, 554 U.S. 105 (rejecting the Fifth and other Circuit courts' adoption of a "sliding scale" approach to deferential review where a benefits plan administrator is determined to be operating under a conflict of interest). Stated somewhat differently, "a plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts." Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2000). Accordingly, a remand for further consideration is unnecessary in this case and Plaintiff will be awarded benefits. Vega, 188 F.3d at 302 ("If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim and attorneys' fees.")

**III. Conclusion**

Accordingly, and for the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. #13) is sustained.  Defendants' Motion for same (Doc. #14) is overruled.  Defendants' Objections (Doc. #18) to the Magistrate Judge's Report and Recommendations (Doc. #17) are overruled and the aforesaid judicial filing is adopted, as supplemented herein by the Court's reasoning and citations of authority.

This matter is hereby remanded to Defendant Robbins & Myers for an award to Plaintiff of the Plan benefits to which she is entitled, including past-due benefits with interest, as well as those to be paid in the future.


September 30, 2010

_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record